### Chas. Matthews v. State.

No. 2370. Decided March 26, 1913.

**1.—Theft of Hog—Insufficiency of the Evidence.**

See opinion for facts held to be insufficient to sustain a conviction for theft of a hog.

**2.—Same—Charge of Court—Defensive Theory.**

Where, upon trial of theft of a hog, the evidence showed that defendant claimed to have purchased the hogs, the meat of which was found in his possession, etc., the court should have submitted his defensive theories of the case.

**3.—Same—Charge of Court—Circumstantial Evidence.**

Where, upon trial of theft of a hog, the evidence was circumstantial, the court should have submitted a proper charge thereon.

**4.—Same—Remarks by Judge—Comment on Testimony.**

Upon trial of theft of a hog, it was error on part of the trial judge to make certain remarks on the condition of the witness and the character of his testimony with reference to finding tracks, etc., as the same was a direct comment on the testimony and in violation of the statute.

Appeal from the District Court of Wharton. Tried below before the Hon. W. C. Carpenter, special judge.

Appeal from a conviction of theft of a hog; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Linn, Conger & Austin* and *W. S. Hall,* for appellant.—On question of court's failure to submit theory of defense: Coggins v. State, 151 S. W. Rep., 312; Wheeler v. State, 34 Texas Crim. Rep., 350;

Bailey v. State, 50 id., 398; Bond v. State, 23 Texas Crim. App., 180; Smith v. State, 24 id., 290.

On question of charge on circumstantial evidence: Wheeler v. State, 61 Texas Crim. Rep., 27; Trevino v. State, 38 id., 64; Brown v. State, 61 id., 334; Yarbrough v. State, 151 S. W. Rep., 545.

On question of remarks by court: Moore v. State, 33 Texas Crim. Rep., 306; Kirk v. State, 35 id., 224.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of hog theft. The State's theory was that appellant committed theft of the hogs from Peter Tharp. Peter Tharp testified he was the owner of several hogs, three of which he missed on Thursday; that he tracked three hogs from near his place to the premises of another man and within 150 yards or such matter from appellant's residence or premises. He introduced testimony of another witness or two who also followed the tracks of the hogs. One witness testified that he knew and could identify one of the tracks as those made by one of Tharp's hogs. He had seen the hogs several times, perhaps quite a number of times, but he could identify that particular track as the one made by a particular hog, although there was no peculiarity about the track, but he just knew that that was the track of one of the missing hogs. The witnesses who followed the tracks of the hogs stated that there were no tracks of human beings following the hogs, or anywhere in proximity of the tracks of the three hogs they followed, nor were there any horse tracks following the hogs. They testified that the hog tracks were plain, but that there was no evidence that anybody had followed or driven the hogs so far as indications on the ground were concerned. They differ considerably about the details of the matter in regard to following the tracks. One witness says the hogs rooted along the trail where they went, turning to the right and left and rooting here and there, and others said they did not. It is not intended here to go into a detailed statement of these matters. There was a search warrant obtained, and an officer went to appellant's house and examined his smokehouse. In it they found the meat or part of the meat of three hogs. There is a difference of testimony among the State's witnesses in regard to the discovery there. For instance, the officer says he carried all the meat away and among other things the head of one hog. Another witness says they carried the head of three hogs away. The witnesses for the State testify that the meat found in appellant's smokehouse would correspond fairly well with the size of the hogs that belonged to Tharp. Appellant denies having had anything to do with Tharp's hogs; he shows that he was absent that day making a purchase of hogs some miles distant, and that he brought these hogs home in a wagon, and killed three of them. That he bought hogs was abundantly proven by quite a number of witnesses. That he killed

three hogs, the meat of which was found in appellant's smokehouse, is proved by witnesses who assisted him in the killing, as well as by his own testimony, and that those hogs he killed were about the same grade and character of hogs. He bought eleven hogs for which he paid $45. He proved by one of his neighbors, from whom he borrowed a pair of mules to work to the wagon in connection with defendant's two mules, which he hitched to the wagon and went after the hogs, that he bought and brought them home. This seems not to have been controverted and was abundantly shown. The vendor of the hogs testified in the case as did several witnesses, and knew of the transaction, as well as those who assisted in bringing the hogs home and in killing three of them, and placing the other eight in his pen, and which appellant had in his pen at the time the officers went there. In addition to this appellant proved an enviable reputation as a law-abiding honest man for twenty-five or thirty years. This was not controverted. The writer is of the opinion that the State failed to make a case, and that the defendant proved his innocence even beyond a reasonable doubt, and unless the State can do better upon another trial, this case should not be prosecuted.

The court failed to charge the jury in regard to appellant's defensive matters, which have been mentioned. This was raised in various ways by appellant, and is presented for reversal. The jury should have been instructed fully and fairly in regard to the testimony introduced by appellant. The authorities are so numerous and harmonious on this question it is not deemed necessary to cite them.

The court's charge on circumstantial evidence is criticised. We are of the opinion the court's charge on this matter is not correct, and upon another trial a full charge on this phase of the law should be given if the case should be again tried.

There is another question reserved by bill of exceptions, which discloses that while the State's witness, Harris, was being cross-examined, the following question was asked: "What did you do with the egg-nog that you had that morning?" to which the witness answered, "I drank the egg-nog." The witness was then asked how much he drank, and he answered he drank all he had. Whereupon the court of its own motion introduced the following objection to such testimony: "It is immaterial how much egg-nog he drank; he might have been drunk but he hunted hogs, and it is immaterial how much egg-nog he drank, if he hunted them it must stand unless it be contradicted; if he said he hunted them, he could have hunted them, whether he was drunk or sober. And he could have hunted them whether he was competent or not." Appellant urged the following exceptions: First, because said remarks of the court expresses the opinion of the court on the testimony, and was hurtful and prejudicial to defendant and violative of the rule which inhibits the court from expressing its opinion of the evidence; second, because the expressed opinion was directly upon the weight of the evidence; third, because the mental and phys-

ical condition of the witness in trailing hog tracks at least five days old was a material question touching his credibility, and the weight of his testimony as to such tracks, and the place they led from, and the place to which they were followed. This bill is approved with the qualification that the witness stated: "The egg-nog he drank on Christmas day did not hurt him. This statement was made by the witness voluntarily and not in answer to any question put to him with reference to it, during the time the court and counsel for defendant were in the colloquy stated in this bill of exceptions." This qualification of the judge does not help the matter. If the witness had drunk egg-nog enough to be affected, it might have some bearing with the jury as to his condition at the time he was following the tracks, at least it was admissible for what it was worth to go to the jury in showing the condition of the witness at the time he was following the tracks. If we were to go to the testimony of this witness in connection with all these matters, it could be shown readily this witness was not altogether in harmony with the other witnsses in regard to tracks. It certainly was error and violative of the statute on the part of the court to make the remarks in the presence and hearing of the jury, which he admits in the bill of exceptions he did make. It was a direct comment on the testimony and violative of the statutory enactment.

For the reasons indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*